UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JENNY YOO COLLECTION, INC., a New York corporation,<br><br>Plaintiff,<br><br>v.<br><br>DAVID'S BRIDAL, INC. and CLAYTON, DUBILIER & RICE, LLC,<br><br>Defendants. | Civil No.<br><br>**JURY TRIAL DEMAND**<br><br>**COMPLAINT FOR PATENT INFRINGEMENT, FEDERAL FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION, FEDERAL TRADEDRESS INFRINGEMENT, STATE UNFAIR COMPETITION COMMON LAW TRADE DRESS INFRINGEMENT, AND RELATED CLAIMS** |

Plaintiff Jenny Yoo Collection, Inc. ("Plaintiff" or "JY") complains and alleges as follows against Defendants David's Bridal, Inc. ("David's Bridal"), and Clayton, Dubilier & Rice, LLC ("CDR") (jointly "Defendants").

## THE NATURE OF THE ACTION

1.     JY was formed when its founder, Chief Executive Officer and President, Jenny Yoo, recognized the absence in the market of stylish, quality bridesmaid dresses.  The Company's initial focus was to create a collection of bridesmaid dresses to fill this gap in the market.  JY launched its first collection of brides maid dresses in 2002.  Since then, JY has expanded dramatically, and Jenny Yoo has designed many stylish and well-received wedding dress and bridesmaid dress collections.

2.     JY revolutionized the bridal gown industry in 2012 when it introduced its wildly popular four panel convertible bridesmaid dresses called the "Aidan" and "Annabelle" dresses. JY markets these dresses under the "NABI by Jenny Yoo" and the "Jenny Yoo Collection," trademarks.  Reviewers, analysts and consumers immediately recognized the convertible dress as

a "game changer."  Before the introduction of JY's convertible dress, convertible dresses were bulky, awkward and utilitarian, requiring that conversions be made by tying together components of the dress in different and often unattractive configurations.  The JY convertible dress was radically different.  It provided for use of lightweight material with two rear and two front panels attached at the waist in a strategic placement in relation to the dress and hung from the waist seam.  The panels blend seamlessly over the natural soft drape and folds of the skirt, and can be easily raised by hand and rearranged for purposes of converting the dress into different neckline style configurations to create inherently distinctive and sophisticated looks.  Because the design permitted conversion of the dress into different "looks" by the wearer, bridesmaids wearing the dresses could express their individuality and wear the dress in the most flattering way for their particular body type while wearing matching dresses.  This innovative, elegant, versatile and visually distinct design was highly appealing to consumers, and it found almost immediate success and acclaim within the market for bridal dresses (and in particular, bridesmaid dresses).  While the JY convertible dress can be worn in many different configurations, it can also be worn in its natural form as a strapless dress with a sweetheart neckline without moving the panels from their original placement.

3.     JY's bridesmaid and wedding designs, including the "Aiden" and "Annabelle" dresses at issue in this case, have received substantial, unsolicited media coverage.  The design and trade dress at issue in this case, embodied in JY's "Aiden" and "Annabelle" dresses, has been featured on various network television programs, such as NBC's "Today Show" and "Fab Life", local television programs in major markets throughout the United States, and in major publications such as Martha Stewart, Martha Stewart Weddings, the Knot, Brides Magazine, and

many others.  JY's convertible bridesmaid dresses are aesthetically pleasing and have become famous both within the industry and among consumers.

4.      The media praise JY has received is directed at JY's convertible bridesmaid dress design and its unique trade dress.   For example, on April 1, 2016, on the <u>All Brides Beautiful</u> website, the "Aiden" and "Annabelle" dresses are called a "wonderful option" for bridesmaid dresses because "[t]his convertible dress has panels in the front and back which create a variety of different necklines and styles" and is "perfect for any body type and leaves room for your bridesmaids to bring out their personal style."

5.      JY's creative achievements have resulted in intellectual property protection for is innovations, including issued design patents, pending utility patent applications, trademarks, and trade dress protection.   Nevertheless, JY's innovations have been the subject of widespread emulation by its competitors, who have attempted to capitalize on JY's success by imitating JY's innovative, elegant, and distinctive product designs.  In an attempt to stop repeated attempts to plagiarize JY's protected design and trade dress, JY has had to pursue costly and time-consuming legal action against numerous competitors including, but not limited to, David's Bridal, Watters Design, Inc. d/b/a Watters & Watters and Wtoo Partners, L.P. ("Watters"), Faviana International, Inc. ("Faviana"), and Essense of Australia ("Essense").

6.      Defendants are one of the principal imitators of JY.  Defendants have repeatedly introduced and sold lines of David's Bridal bridesmaid dresses which copy and unfairly compete directly with JY's patented convertible dress.   Instead of pursuing independent product development or licensing products from third parties, David's Bridal, in conjunction with and on behalf of Defendants and CDR, has chosen to slavishly copy JY's innovative and distinctive design as its own.  David's Bridal passes off JY's famous convertible dress designs as its own.

David's Bridal has even misappropriated and copied JY's distinctive approach to marketing, using models wearing its "knock-off" dresses in poses and presentations that are substantially identical to the poses and presentations of JY's famous dress on its website (including a step by step "How-To-Style" guide) and in its advertising and promotional materials. Defendants have undertaken these actions to purposely try to confuse consumers into thinking David's Bridal dresses are JY's "Aiden" and "Annabelle" dresses. Indeed, consumer comments about David's Bridal's dresses on various websites establish consumer confusion between David's Bridal's copycat dresses and JY's dresses.

7.   The products at issue in this case are David's Bridal's new "Style-Your-Way" dresses: (i) the "Long Mesh Style-Your Way 6 Tie Bridesmaid Dress," Style No. F19515 and (ii) the "Mesh Long Style-Your-Way Bridesmaid Dress," Style No. 4XLF19515 (hereinafter, the "New Infringing Style-Your-Way Dresses"). The New Infringing Style-Your-Way Dresses incorporate JY's protected dress design and infringe upon its intellectual property rights. Defendants designed and introduced the New Infringing Style-Your-Way Dresses into the United States market in mid-2018. This was not the first time that David's Bridal copied JY's "Aiden" and "Annabelle" dress designs.

8.   David's Bridal previously sold lines of bridesmaid dresses called "Versa" which imitated JY's famous "Aidan" and "Annabelle" convertible dresses. JY commenced an action against Defendants in 2016 to stop David's Bridal from selling knock-offs of JY's "Aiden" and "Annabelle" dresses (the "2016 Action"). The products at issue in the 2016 Action were: (i) Long Versa Convertible Mesh Dress Style # F15782; (ii) Long Versa Convertible Junior Bridesmaid Dress Style # JB9015; (iv) Short Versa Convertible Mesh Dress Style # F18092; (v)

Short Versa Convertible Mesh Dress Style # 2XLF18092; and (vi) Long Tulle Convertible Versa Dress Style # F19114 (collectively, the "Versa Dresses").

9.      The 2016 Action was settled in March 2018 and David's Bridal agreed to discontinue the Versa Dresses and take them off the market entirely by the end of 2018. However, just months after the settlement, in mid-2108, David's Bridal introduced the New Infringing Style-Your-Way Dresses.    Plainly, Defendants designed, manufactured, and introduced these new dresses into the United States market to replace the Versa Dresses that were the subject of the 2016 Action.  Indeed, consumer comments online to the new Style-Your-Way Dresses show that consumers immediately confused them with the old Versa Dresses that David's Bridal agreed to take off the market.

10.     The New Infringing Style-Your-Way Dresses once again, copy JY's patented designs and infringe upon JY's protected intellectual property rights.  Among other things, the New Infringing Dresses include the same two front and two rear panels stitched into the waist seam.  The overall placement of the two front and two rear panels is the same as the placement of these panels on the "Aiden" and "Annabelle" dresses.  Like the JY dresses, the panels seamlessly blend into the skirt and can be easily raised, lowered and attached by hand into different configurations for purposes of converting the dress into the same style configurations as JY's "Aidan" and "Annabelle" dresses.

11.     Since David's Bridal began selling the New Infringing Style-Your-Way Dresses in mid-2018 just a few months after it settled the 2016 Action in March 2018, it appears that David's Bridal negotiated and entered into the Settlement Agreement with JY in bad faith. Upon information and belief, while David's Bridal was making material misrepresentations and omissions to JY during the mediation that it intended to discontinue the sale of "knock off"

dresses that imitate JY's "Aiden" and "Annabelle" convertible bridesmaid dresses, Defendants were already in the process of developing new "knock off" dresses.   By doing so, Defendants were able to fraudulently induce JY to settle the 2016 Action because they had led JY to believe that they would be taking the knock-off dresses off the market.

12.      Also, by introducing the New Infringing Style-Your-Way Dresses, Defendants breached the terms of the Settlement Agreement.  As a result of Defendants' actions, JY is once again forced to seek relief from this Court to put an end to Defendants' illegal conduct, protect its valuable intellectual property rights, and obtain compensation for Defendants' ongoing violations and breach of contract.

## THE PARTIES

13.      JY is a New York corporation having its principal place of business at 132 West 36th Street, 9th Floor, New York, New York 10018.

14.      Upon information and belief, Defendant David's Bridal is a Florida corporation, having its principal place of business at 1001 Washington Street, Conshohocken, PA 19428.

15.      David's Bridal operates more than 290 stores nationwide and sells bridal gowns, and dresses for bridesmaids, flower girls, junior bridesmaids, and mothers of the wedding. It also sell's men's Tuxedos and accessories.   It sells its gowns and dresses primarily under the "David's Bridal" brand name. It also sells a small number of relatively low cost "designer brand" gowns, including dresses designed by Vera Wang and Jenny Packham. David's Bridal is a prominent, well-known competitor of JY. David's Bridal stores have long been understood within the bridal dress industry as featuring relatively low cost gowns and dresses for budget conscious consumers.

16.     Upon information and belief, CDR is a Delaware corporation, having its principal place of business at 375 Park Avenue, 18th Floor, New York, New York 10152.

17.     Upon information and belief, CDR is the principal investor in, and corporate parent of, DBI.

18.     On information and belief, CDR "Partner," Kenneth A. Giuriceo is a member of CDR's Management Committee with responsibility for managing the business and operations of DBI.

19.     On information and belief, CDR directs the operations and business strategies of DBI . As part of these duties, CDR was involved in the settlement of the 2016 Action.  Indeed, CDR was specifically named as a "released party" in the Settlement Agreement.

## JURISDICTION

20.     This Court has subject matter jurisdiction under 15 U.S.C. § 1121 (action arising under the Lanham Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (any Act of Congress relating to patents or trademarks); 28 U.S.C. § 1338(b) (action asserting claim of unfair competition joined with a substantial and related claim under the trademark laws); and/or 28 U.S.C. § 1367 (supplemental jurisdiction).

21.     This Court has personal jurisdiction over CDR because its principal place of business is in this district.  This Court has personal jurisdiction over David's Bridal and CDR because each of these entities has committed and continues to commit acts of infringement in violation of 35 U.S.C. § 271 and 15 U.S.C. § 1114 and 1125 in New York and have regular and established places of business in New York.

22.     Upon information and belief, Defendants maintain and operate at least 15 retail David's Bridal stores within 100 miles of this Court, and maintain at least 17 retail stores within the State of New York.

23.     Upon information and belief, David's Bridal also participates in "Bridal Fashion Week," which is held twice annually within this District.

24.     Additionally, Defendants place infringing products into the stream of commerce, with the knowledge or understanding that such products are sold in the State of New York, including in this District.  The acts by David's Bridal and CDR  cause injury to JY within this District.

25.     Upon information and belief, David's Bridal derives substantial revenue from the sale of infringing products within this District, expects its actions to have consequences within this District, and derives substantial revenue from interstate and international commerce.

26.     Upon information and belief, David's Bridal sells substantial amounts of infringing products to consumers who reside within the State of New York through its internet-based business.

27.     This Court also has jurisdiction over Defendants because the Settlement Agreement of the claims in the 2016 Action was negotiated, entered into, and breached by Defendants in New York.

**VENUE**

28.     Venue is proper within this district and division under 28 U.S.C. § 1391(b) and (v) because David's Bridal transacts business within this district and offers for sale in this district products that infringe the JY patents, trade dress, and trademarks.  In addition, venue is proper

because CDR's principal place of business is in this district.  Moreover, a substantial part of the events giving rise to the claims occurred in this District.

29.     Additionally, venue is proper pursuant to 28 U.S.C. § 1400(b) because Defendants have committed acts of infringement and have regular and established places of business in this District.

## BACKGROUND

### JY'S Innovations

30.     JY is a leading designer and manufacturer of bridesmaid gowns, wedding gowns, and other wedding apparel.  JY was founded by Jenny Yoo, who launched her first collection of bridesmaid dresses in 2002.  As a result of the extraordinary creativity of Jenny Yoo and JY's significant investment in research and development, in 2012, JY introduced into the market its innovative, convertible "Aidan" and "Annabelle" bridesmaid dress designs that have changed the face of the bridal fashion industry.  JY's convertible bridesmaid gowns were unique when JY introduced them into the market because of the revolutionary trade dress incorporated into them.

31.     JY's trade dress, as shown in the drawings herein below, includes, as a special feature, front and back panels of fabric in a particular placement in relation to the dress and which overlay the full length of the skirt and naturally hang down the skirt of the dress ending just above the bottom hemline.  The panels are strategically placed and stitched into the waist seam.  The panels seamlessly blend with the dress, regardless of whether the panels are hanging in their natural position or raised over the bodice to create the different configurations of the dress.  When the panels are in the hanging position as an overlay of the skirt, they layer over the full length of the entire skirt and seamlessly blend with the natural and gentle soft folds, creating the illusion, unique when introduced by JY, that the panels and skirt are integrated.  Furthermore, one or more of the panels can be raised upwards and over the sweetheart neckline bodice into

different style configurations of the dress.  Once again, the panels seamlessly blend into the bodice of the dress.  This creates the illusion that the panels smoothly blend uninterrupted into the bodice, skirt and/or entire dress to create a singular, integrated look. The concept of "seamless blending" means that from the point of view of an ordinary observer, it will be noticeable that the dress contains front and back panels separate from other components of the dress, which when integrated into the dress create looks that are smooth and continuous, with no apparent gaps or spaces between one part or the next, and without seams or obvious joins.  Thus, while the front and rear panels are noticeable to the ordinary observer as distinct components of the dress, nonetheless, they create the impression of an integrated, natural, elegant, unified dress design.

32.    This ornamental, non-functional special feature as described above has become JY's renowned Trade Dress (the "JY Trade Dress"), instantly recognizable among consumers and industry professionals alike as being associated with JY.

33.    As a direct result of its innovative and distinctive design and its cutting edge technological features, including the JY Trade Dress, JY's convertible bridal gowns were an instant success, and they immediately became uniquely associated with JY as its source. Reviewers and analysts universally praised JY's bridesmaid gowns for their "game changing" features.  Sales were strong, and the popularity of this new design contributed substantially to the success of the JY brand and JY's reputation as a leader in the market for bridal and bridesmaid designs.

34.    JY's bridesmaid and wedding designs, including the convertible dress designs at issue in this case, have received substantial, ongoing, unsolicited media coverage.  The design and trade dress at issue in this case, JY's convertible bridesmaid "Aiden" and "Annabelle" dress,

has been featured on various network television programs, such as NBC's "Today Show" and "Fab Life", local television programs in major markets throughout the United States, and in major publications such as Martha Stewart, Martha Stewart Weddings, the Knot, Brides Magazine, and many others.  JY's convertible bridesmaid dresses are aesthetically pleasing and have become famous both within the industry and among consumers.  The media praise JY has received is directed at JY's convertible bridesmaid dress design and its unique trade dress.

35.     The JY "Aiden" and "Annabelle" dresses have achieved secondary meaning and they are instantly recognized as JY dresses in that they are made of lightweight material with: (i) a strapless upper garment (bodice) portion covering an area above the waist of the user  having a front and rear portion; (ii) a skirt having a front and rear portion attached to the upper garment (bodice); and (iii) two front panels and two rear panels that overlay the full length of the skirt ending just above the bottom hemline.  The panels are stitched into the waist seam in a particular placement in relation to the dress and naturally hang down the skirt of the dress creating the illusion that the panels and skirt are integrated.  The panels have a natural soft drape that seamlessly blends with the dress regardless of whether the panels are hanging in their natural position or raised over the bodice to create the different configurations of the dress.  These panels can be rearranged for purpose of converting the dress into different neckline styles and inherently distinctive looks such as a strapless configuration, classic halter configuration, Criss-Cross V-neck configuration; One Panel/One Shoulder Configuration, Blouson Wrap Configuration and One shoulder bow configuration.

36.     JY's convertible bridesmaid dresses, sold under the "NABI by Jenny Yoo" and "Jenny Yoo Collection" brand names, are sold in major retail stores throughout the United States, such as, for example, Nordstrom.  In substantial part because of these convertible

bridesmaid dress designs and their unique JY Trade Dress, Jenny Yoo has become recognized nationally as one of the leading and most successful designers in the bridal industry. From 2012 though 2016, JY sold more than 132,000 of these convertible dresses, and over 37,000 in Nordstrom alone, resulting in revenues from this single source in excess of $30 million total and over $10 million from sales at Nordstrom.

37.     In addition to Nordstrom, JY's convertible bridesmaid dresses are sold at other major bridal and general retailers such as Saks Fifth Avenue, Lord & Taylor, BHLDN Weddings, Kleinfeld, ModCloth, Amazon Fashion, Brideside, Bella Bridesmaids, Vow to be Chic, and Anthropologie each of which displays JY's convertible bridesmaid dresses on its website, and in its marketing and promotional efforts such as catalogs, advertisements, in-store events, and many others. The advertisements and promotions of the convertible dresses by these major retailers have contributed substantially to the national fame of the JY Trade Dress.

38.     From 2012 through 2017, JY spent more than $600,000 on advertising for dresses sold under the "NABI by Jenny Yoo" brand name, which include the "Aidan" and "Annabelle" dresses embodying the JY Trade Dress.

39.     The major retailers who have carried the dresses have also expended substantial sums to advertise them in their catalogues, print advertisements, web-sites and other advertisements and promotions. While JY cannot quantify these sums, they certainly equal or exceed in total the amounts expended by JY.

40.     JY also actively utilizes social media to market and promote its products, including the JY Trade Dress embodied in the convertible dresses at issue in this case. JY's Facebook page has 17,046 followers nationwide, and JY uses it to announce its various trunk shows and other events which feature the bridesmaid dresses at issue in this case which embody

the JY Trade Dress.  JY also utilizes Twitter and Instagram to market and promote its products, including the convertible dresses at issue here.  JY has about 84,800 followers nationwide on its "jennyyoonyc" Instagram account alone, and a search on Instagram for JY bridesmaid dresses reveals numerous other Instagram accounts that show JY's bridal dresses including those at issue in this case.  Photographs of JY's famous convertible dress embodying the JY Trade Dress are ubiquitous on Facebook and Instagram.   Photographs of JY's famous convertible dress embodying the JY Trade Dress on Tumblr and Pinterest are also extensive.

41.     The national fame of the JY convertible dresses that embody the JY Trade Dress is demonstrated by a search using the Google web browser for "Jenny Yoo dresses" which yields about 2,600,000 results.  Another search for "Jenny Yoo convertible bridesmaid dresses" reveals about 580,000 results.  Likewise, a search for "Jenny Yoo Collection" (the company name) yields about 2,940,000 results.  This demonstrates that the JY convertible dresses and JY Trade Dress have achieved a dynamic, remarkable presence in social media and on internet-based websites.

42.     Further, major publications within the bridal gown industry and entertainment industry regularly feature JY's convertible dresses and the JY Trade Dress in their postings on Facebook, Twitter, Instagram, and Tumblr, among other such websites.

43.     JY showcases the "Aidan" and "Annabelle" dresses at its show room locations in New York, NY, and Chicago, IL.  JY also markets and advertises its products at trunk shows, bridal shows, and numerous other events all across the United States.  By promoting its convertible dress products at these trunk shows and industry trade events, by developing a strong social media presence on Facebook and Instagram, among other social media websites, and through the advertising and promotional efforts of its retail customers (such as those identified in

paragraph 30 above), JY and the JY Trade Dress at issue in this case have achieved widespread recognition in the bridal industry and among consumers and have become immensely famous and popular.

44.     JY also regularly publishes catalogs and press releases and maintains an extensive, sophisticated, and visually compelling website, which promote JY's products and make the brand, and the convertible dress products, known nationally and internationally as being those of JY.

45.     In 2012, JY began a national campaign to market and sell "Aidan" style number 1282 convertible bridesmaid dress, now sold under the "NABI by Jenny Yoo" and "Jenny Yoo Collection" brands.  The following is a drawing that shows this dress in configurations which vary depending upon the placement of the panels attached to the front and rear waist band of the dress, together with a technical sketch showing the placement of two panels hanging downward from the front waist portion of the dress and two panels hanging downward from the rear waist portion of the dress.  In each case in which the JY Trade Dress is shown below, the panels blend seamlessly into the bottom portion of the dress and/or the bodice of the dress, depending on the specific configuration.  Although the panels always remain noticeable as distinct components of the dress, they seamlessly blend into the dress to create a smooth and integrated appearance, without noticeable gaps.  This design was revolutionary, because no previous design for a convertible bridesmaid dress involved placement of panels in this manner, and it created an aesthetically pleasing, new, non-obvious, non-functional, ornamental look.



"Aidan" convertible dress (Style #1282)



46.    Soon thereafter, JY also introduced another version of essentially the same design, which it calls "Annabelle," style number 1452, and sells under the "NABI by Jenny Yoo" and "Jenny Yoo Collection" brand names.  The Annabelle is essentially the same as the Aidan except that the band attached to the waist in the Aidan design is removed, and replaced with an attachable sash.  It contains the same revolutionary feature as the Aidan—namely, two front and two rear flaps attached to the waist in a strategic position to the dress.  It also contains the same distinctive, non-functional JY Trade Dress.  The following is a sketch showing the "Annabelle" design, and a technical drawing of the design.



47.     With the exception of the waist band, the ordinary observer would find no discernable difference between the "Aidan" and "Annabelle" designs.   Moreover, in most configurations, the difference in the waist band is not noticeable.   This is because in many configurations of the "Annabelle" design, one or more of the panels are wound around the waist, and the appearance at the waist then becomes exactly the same as the "Aidan" design. Consumers and industry professionals alike would recognize that both the "Aidan" and "Annabelle" designs feature the same unique JY Trade Dress described with specificity above— a special and distinct feature that was a radical departure from prior convertible bridesmaid dress designs.   This special feature, the JY Trade Dress, is a unique and now famous feature of both the "Aidan" and "Annabelle" designs.   This non-functional, unique and distinctive JY Trade

Dress contributed substantially to the widespread popularity of the "Aidan" and "Annabelle" designs. From the standpoint of the ordinary observer, these two designs and their distinctive JY Trade Dress are essentially the same—because of the placement of and uses for the convertible panels and their seamless blending into the bottom and/or bodice of the dress regardless of the specific configuration of the panels.

48.     Soon after JY introduced the "Aidan" and "Annabelle" dresses into the market, they became immensely popular. These "NABI by Jenny Yoo" designs received extensive unsolicited press coverage and many positive reviews both within industry circles and publications that focus on the consumer market. And sales skyrocketed. At present, JY's "Aidan" and "Annabelle" dresses are on sale in major department stores and prominent bridal shops and boutiques in virtually every major metropolitan market in the United States (and most small towns as well). They are also sold on numerous on-line, e-commerce websites.

49.     The fame of these dress designs is underscored by the existence of a substantial secondary market for these dresses on eBay—where consumers sell used clothing. On any single day, hundreds, and often more than 1,000, "Aidan" and "Annabelle" dresses are available for resale on eBay.

50.     Indeed, year after year, the "Aidan" and "Annabelle" dress designs are among the best-selling bridesmaid designs nationwide. So widespread is their penetration within the market for bridesmaid and wedding dresses, that the unique look and configuration of these designs, including most importantly, the JY Trade Dress described above, is now closely associated in the minds of average wedding and bridal-wear consumers with JY (and Jenny Yoo as the designer and founder of JY). It is fair to say that in the minds of most consumers, these famous designs,

and the JY Trade Dress which they embody, have become synonymous with the designer Jenny Yoo and her company, JY.

51.     Within the bridal dress design industry, at both the wholesale and retail store level, the "Aidan" and "Annabelle" dress designs have become ubiquitous.  Consumers who see these dresses hanging in racks in stores or photographs of them on e-commerce websites invariably associate the look and configuration of these dresses with JY and its founder, Jenny Yoo.  The "Aidan" and "Annabelle" convertible dress designs, sold under the "NABI by Jenny Yoo" and "Jenny Yoo Collection" brand names, have become among the most well-known bridal dress designs in the United States, closely associated in the minds of ordinary consumers with JY and its founder, Jenny Yoo.

## JY'S INTELLECTUAL PROPERTY RIGHTS

### JY's Design Patents

52.     JY has protected its innovative designs and cutting-edge technologies through a broad range of intellectual property rights.  Recognizing that its innovative designs involve both unique ornamental designs and functional innovations, JY has sought both design patents and utility patents.  Since 2012, JY has notified the public in its website and marketing materials that these patents were either pending or issued (as appropriate in the time frame).  The United States Patent Office has issued the design patents listed below.  JY's design patents cover the ornamental features of JY's "Aidan" and "Annabelle" bridesmaid dress designs, such as two rear and two front convertible panels attached at the waist in a strategic position to the dress which blend naturally and seamlessly into the dress.  JY owns all right, title, and interest in and to each of the asserted design patents listed below, copies of which are attached as Exhibits 1 and 2.  The designs covered by these patents are distinctive and serve to identify JY as the source of the bridesmaid dresses which embody such designs.  Moreover, the features covered by these patents

are not dictated by function; rather, they are the product of aesthetic choices made by Jenny Yoo when she created the designs.

| Patent Number | Title |
|---|---|
| D 698,120 (the "'D120 patent") | Dress |
| D744,723 (the "'D723 patent") | Convertible Dress |

### JY'S Utility Patent Applications

53.     JY's utility patent applications cover many of the elements that have come to be associated with JY's convertible bridesmaid dresses.   These include (a) a patent covering functional features of the convertible dresses, including the front and rear panels extending downward, attached to the front and rear panels of the gathered skirt with fastening means that allow for multiple adaptations and configuration, and (b) a patent covering unique methods for using a multi-use garment consisting of specified functional convertible and adoptable elements.

54.     These pending patent applications include the following to which JY owns all rights, title, and interest.

| Patent Number | Title |
|---|---|
| 13/672,422 (the "'422 application") | Multi-Use Garment |
| 14/720,453 (the "'453 application") | Multi Use Garment |

### JY's Trademarks and Design Marks

55.     JY owns United States trademark registration number 3339930 for "Jenny Yoo Collection", which was registered on November 30, 2007, and acknowledged by the United States Patent and Trademark Office as incontestable on September 13, 2013.   JY also owns United States trademark registration number 4524466 for "NABI by Jenny Yoo", which was registered on May 6, 2014.

56.     JY also owns common law trademark rights for the brand names "NABI by Jenny Yoo", "Aidan" and "Annabelle" which it has used in commerce to market its convertible dress designs since 2012.   JY owns trademark registrations for the combined word/design marks "NABI by Jenny Yoo", registration numbers 5,487,027 and 5,487,026, both of which were registered on June 5, 2018.

### JY's Trade Dress

57.     As described above, JY's "Annabelle" and "Aidan" bridesmaid dress designs, as covered by the aforesaid design patents, share a unique, distinctive, non-functional, ornamental feature, the JY Trade Dress, as shown in the drawings below.  The JY Trade Dress encompasses embodied in the "Aiden" and "Annabelle" dresses makes them associated among consumers and industry professionals alike with JY as its source.  Accordingly, JY has acquired common law rights in this JY Trade Dress.

58.     The character and scope of the JY Trade Dress is that the dresses are made of lightweight material with: (i) a strapless upper garment (bodice) portion covering an area above the waist of the user having a front and rear portion; (ii) a skirt having a front and rear portion attached to the upper garment (bodice); and (iii) two front panels and two rear panels that overlay the full length of the skirt ending just above the bottom hemline.

59.     The JY Trade Dress, as shown in the drawings herein, includes as a special feature, two front and two back panels of fabric that overlay the full length of the skirt ending just above the bottom hemline.  The panels are stitched into the waist seam in a particular placement in relation to the dress and naturally hang down the skirt of the dress creating the illusion that the panels and skirt are integrated.  The panels have a natural soft drape that seamlessly blends with the dress regardless of whether the panels are hanging in their natural

position or raised over the bodice to create the different configurations of the dress. These panels can be rearranged for purpose of converting the dress into different neckline styles and inherently distinctive looks such as a strapless configuration, classic halter configuration, Criss-Cross V-neck configuration; One Panel/One Shoulder Configuration, Blouson Wrap Configuration and One shoulder bow configuration.

60.      These features of the "Aiden" and "Annabelle" dresses are distinctive in that they allow the two panels placed in front and the two panels placed in back to be seamlessly blended into the bottom or bodice of the dress depending on the specific configuration chosen by the consumer. This creates the illusion that the panels smoothly blend uninterrupted with the bodice, skirt and/or entire dress to create a singular, integrated look. The concept of "seamless blending" means that from the point of view of an ordinary observer, it will be noticeable that the dress contains front and back panels separate from other components of the dress, which when integrated into the dress create looks that are smooth and continuous, with no apparent gaps or spaces between one part or the next, and without seams or obvious joins. Thus, while the front and rear panels are noticeable to the ordinary observer as distinct components of the dress, nonetheless, they create the impression of an integrated, natural, elegant, unified dress design. Thus, JY's unique and unprecedented Trade Dress encompasses the overall look of the "Aiden" and "Annabelle" dresses and serves to identify JY as the source of these dresses to consumers.

61.      The JY Trade Dress is non-functional. Indeed, the United States Patent Office made a determination of non-functionality upon issuing the 'D120 and 'D723 Patents to JY.

62.      The JY Trade Dress has achieved secondary meaning. The "Aiden" and "Annabelle" dresses are instantly recognized as JY's convertible bridesmaid dresses.

63.     JY used, marketed and sold its distinctive JY Trade Dress in commerce throughout the United States since 2012.  JY exclusively used the JY Trade Dress for no less than two years until 2014.

64.     As set forth above, JY has made significant expenditures to advertise the "Aiden" and "Annabelle" dresses.

65.     As set forth above, JY has had substantial success selling the "Aiden" and "Annabelle" dresses and has in fact sold more than 100,000 of them to date.

66.     In selling these dresses, JY has consistently endeavored to associate the JY Trade Dress with JY.  These efforts include, but are not limited to, substantial advertising such as print and internet advertisements which use the tagline "one dress . . . with endless possibilities" and which include photographs of the "endless ways to tie" these dresses.

67.     As set forth above, JY has received substantial and unsolicited media coverage of its "Aiden" and "Annabelle" dresses and the elements of JY's Trade Dress have been specifically praised in the media.

68.     Consumers have come to identify JY as the source of the "Aiden" and "Annabelle" dresses which embody JY's Trade Dress.  This is established by existing consumer reviews, and consumer communications with JY and the retail stores which market and sell the "Aiden" and "Annabele" dresses,  which will be further supported by consumer surveys.

69.     Numerous competitors of JY including, but not limited to, David's Bridal, Watters, Essense and Faviana, have attempted to plagiarize JY's Trade Dress and have produced numerous alternative designs for convertible dresses, but none of them feature two front and two rear panels attached to the waist that permit this elegant, seamless integration of panels into the

bottom of the dress described above. Nonetheless, there is a likelihood of consumer confusion between JY's dresses and these competitors' knock-offs.

70. David's Bridal, in particular, has engaged in a pattern of copying JY's Trade Dress so that it can mass produce and sell copycat dresses at a much lower price point to JY's extreme detriment.

71. The JY Trade Dress is embodied in each different configuration of the "Aidan" and "Annabelle" dress design, including the specific design configurations shown in the paragraphs below.

72. The first "Aidan" dress design configuration incorporates the JY Trade Dress in the manner described and shown below ("First 'Aidan' Configuration"):

- a dress having a strapless upper garment (bodice) portion covering an area above the waist of the user having a front and rear portion;

- a skirt having a front portion and rear portion attached to the upper garment (bodice);

- a waist band attached at the bottom portion of the upper garment (bodice); and

- front and rear panels attached to the waist seam of the skirt, extending downward so that they blend seamlessly with the skirt.



73.     The second "Aidan" design configuration incorporates the JY Trade Dress in the

manner described and shown below ("Second 'Aidan' Configuration"):

- a dress having a strapless upper garment (bodice) portion covering an area above the waist of the user having a front and rear portion;

- a skirt having a front and rear portion attached to the upper garment (bodice);

- a waist band attached at the bottom portion of the upper garment (bodice);

- two front and two rear panels attached to the waist seam of the skirt of which both rear panels wrap around the front waist and tie at the back waist creating a

tied sash configuration, with the two rear panels blending seamlessly with the skirt; and

- 2 front panels are raised over the bodice covering both sides of the neckline of the user to create a Classic Halter Strap configuration, with the two front panels blending seamlessly into the bodice.



Aidan Halter with Tied Sash look

74.    The third "Aidan" design configuration incorporates the JY Trade Dress in the manner described and shown below ("Third 'Aidan' Configuration"):

- a dress having a strapless upper garment (bodice) portion covering an area above the waist of the user having a front and rear portion;

- a skirt having a front and rear portion attached to the upper garment (bodice);

- a waist band attached at the bottom portion of the upper garment (bodice);

- two front and two rear panels attached to the waist seam of the skirt of which both rear panels wrap around the front waist and tie at the back waist creating a tied sash configuration such that the tied rear panels blend seamlessly with the skirt; and

- two front panels raised over the bodice covering both shoulders of the user to create Criss Cross V-neck configuration, with the two front panels blending seamlessly with the skirt.



75.    The fourth "Aidan" design configuration incorporates the JY Trade Dress in the manner described and shown below ("Fourth 'Aidan' Configuration"):

- a dress having a strapless upper garment (bodice) portion covering an area above the waist of the user having a front and rear portion;

- a skirt having a front and rear portion attached to the upper garment (bodice);

- a waist band attached at the bottom portion of the upper garment (bodice);

- two front and  rear panels attached to the waist seam of the skirt of which both rear panels wrap around the front waist and tie at the back waist creating a tied sash configuration, such that the two rear panels blend seamlessly with the skirt; and

- one front panel extends downward so that it blends seamlessly with the skirt, while the second front panel is raised above the bodice to create a One Panel/One Shoulder configuration covering a portion of the right or left shoulder of the user, with the second front panel blending seamlessly into the bodice.



76.     The fifth "Aidan" design configuration incorporates the JY Trade Dress in the manner described and shown below ("Fifth 'Aidan' Configuration"):

- a dress having a strapless upper garment (bodice) portion covering an area above the waist of the user having a front and rear portion;

- a skirt having a front and rear portion attached to the upper garment (bodice);

- a waist band attached at the bottom portion of the upper garment (bodice);

- two front and two rear panels attached to the waist seam of the skirt of which both rear panels wrap around the front waist and tie at the back waist creating a

tied sash configuration, such that the two rear panels blend seamlessly with the skirt; and

- two front panels are raised up over the bodice covering and draping over both shoulders of the user to create a Blouson Wrap configuration, with the two front panels blending seamlessly into the bodice.



77.    The sixth "Aidan" design configuration incorporates the JY Trade Dress in the manner described and shown below ("Sixth 'Aidan' Configuration"):

- a dress having a strapless upper garment bodice portion covering an area above the waist of the user having a front and rear portion;

- a skirt having a front and rear portion attached to the upper garment (bodice);

- a waist band attached to the bottom portion of the upper garment (bodice);

- two front and two rear panels attached to the waist seam of the skirt, of which both front panels and one or more rear panels are raised over bodice to create a One Shoulder Bow configuration covering a portion of the right or left shoulder

of the user, with both front panels and one or more rear panels blending seamlessly into the bodice; and

- One rear panel may, at the option of the user, extend downward to blend seamlessly with skirt.



78.    The first "Annabelle" design configuration comprises the "First 'Aidan' Configuration," but excluding a waistband attached at a bottom portion of the upper garment (bodice), and instead, features a coordinating detachable sash used to wrap around the waist.



79.     The second "Annabelle" design configuration comprises the "Second 'Aidan'
Configuration," but excludes a waistband attached to the upper garment (bodice), and instead,
features a coordinating detachable sash used to wrap around the waist.

Annabelle w/ sash view



80.     The third "Annabelle" configuration comprises the "Third 'Aidan' Configuration," but excludes a waistband attached to the upper garment (bodice), and instead, features a coordinating detachable sash used to wrap around the waist.



81.    The fourth "Annabelle" design configuration comprises the "Fourth 'Aidan' Configuration," but excludes a waistband attached to the upper garment (bodice), and instead, features a coordinating detachable sash used to wrap around the waist.



82.     The fifth "Annabelle" design configuration comprises the "Fifth 'Aidan' Configuration," but excludes a waistband attached to the upper garment (bodice), and instead, features a coordinating detachable sash used to wrap around the waist.



83.    The sixth "Annabelle" design configuration comprises the "Sixth 'Aidan' Configuration," but excludes a waistband attached to the upper garment (bodice).

Annabelle one shoulder bowtie



84.     Each of the foregoing "Aidan" and "Annabelle" product configurations incorporates the JY Trade Dress.

## DEFENDANTS' INFRINGING PRODUCTS

85.     Defendants have made, or caused to be made, imported into and/or sold in the United States the following products, each of which infringes on one or more of JY's intellectual property rights: (i) the "Long Mesh Style-Your Way 6 Tie Bridesmaid Dress," Style No. F19515 and (ii) the "Mesh Long Style-Your-Way Bridesmaid Dress," Style No. 4XLF19515 (referred to

herein as the "New Infringing Style-Your-Way Dresses"). Each of these dresses incorporates the JY Trade Dress into its design configuration.

86.     The New Infringing Style-Your-Way Dresses are substantially identical to, and incorporate, JY's distinctive dress designs. Like JY's "Aiden" and "Annabelle" dresses the New Infringing Style-Your-Way Dresses as advertised on the David's Bridal website, are made of "soft and flowy" material and have: (i) a strapless upper garment (bodice) portion covering an area above the waist of the user having a front and rear portion; (ii) a skirt having a front and rear portion attached the upper garment (bodice); and (iii) two front panels and two rear panels which can also be easily raised, lowered and attached by hand into different configurations to create different design looks, such as a strapless configuration, classic halter configuration, criss-cross neck configuration, one-panel/one-shoulder configuration, blouson wrap/cap sleeves configuration and one shoulder bow configuration.

87.     Upon information and belief, Defendants introduced the New Infringing Style-Your-Way Dresses into the market in mid-2018 just a few months after the settlement between David's Bridal and JY of JY's claims for patent and trade dress infringement based upon David's Bridal's Versa Dresses in or about March 2018. As part of the settlement, David's Bridal agreed to discontinue the Versa Dresses and remove them from the United States market by December 31, 2018. The New Infringing Style-Your-Way Dresses introduced by Defendants after the settlement, however, are substantially identical to, and incorporate, JY's distinctive dress designs in the same manner as the Versa Dresses. Thus, the New Infringing Style-Your-Way Dresses were plainly made, imported into and/or sold by Defendants as a replacement for the Versa Dresses.

88.     Indeed, the name of Defendants' new dresses, the "Style-Your-Way" dresses copies JY's Trade Dress embodied in the "Aiden" and "Annabelle" dresses which are advertised by JY as "one dress . . . with endless possibilities" and which include photographs of the "endless ways to tie" these dresses.

89.     Also, Like JY, David's Bridal specifically advertises the elements of JY's protected Trade Dress in marketing the New Infringing Style-Your-Way Dresses to consumers. On its website, David's Bridal states that the convertible bridesmaid Style-Your-Way dresses have "long ties," i.e. panels, which "allow you to customize the sweetheart bodice with the straps or sleeves you desire – from a braided one-shoulder to flowy cap sleeves."

90.     The following are screen shots from David's Bridal's website that show the first New Infringing Style-Your-Way Dress called the "Long Mesh Style-Your Way 6 Tie Bridesmaid Dress," Style No. F19515:









91.    The following are screen shots from David's Bridal's website that show the second New Infringing Style-Your-Way Dress, the "Mesh Long Style-Your-Way Bridesmaid Dress," Style No. 4XLF19515:





BRIDES
BRIDESMAIDS
DRESSES
ACCESSORIES
Make an Appointment
Find a Store
NEW
Mesh Long Style-Your-Way Bridesmaid Dress
DAVID'S BRIDAL
$194.95
THIS ITEM QUALIFIES FOR FREE SHIPPING!
COLOR
SIZE
QUANTITY
Your selections cost:
Feedback
TOP

FREE SHIPPING on all orders $100 and up discount applied at checkout See Details & Daily Deals
Make an Appointment
Find a Store
DAVID'S BRIDAL
BRIDES
BRIDESMAIDS
DRESSES
ACCESSORIES
GIFTS & DECORATIONS
SHOES
PROM
SALE
THE BLOG
NEW
Mesh Long Style-Your-Way Bridesmaid Dress
DAVID'S BRIDAL
$194.95
THIS ITEM QUALIFIES FOR FREE SHIPPING!
COLOR
SIZE
Feedback

92.     Additionally, there is an "Inspiration & Guidance" page on David's Bridal's website for the "Style-Your Way 6 Tie Bridesmaid Dress."  This page of the website shows "ways to wear: Style-Your-Way Mesh Dress" and contains photographs of the New Infringing Dresses.  The page also contains You Tube videos to show customers how to arrange the front and rear panels of the New Infringing Dresses in the same styles as JY's "Aiden" and "Annabelle" dresses.

93.     The photographs and videos of the New Infringing Dresses on the David's Bridal website show the two front and rear panels of the New Infringing Dresses arranged in the same design configurations as JY's "Aiden" and "Annabelle" dresses such as classic halter configuration, criss-cross neck configuration, one-panel/one-shoulder configuration, blouson wrap/cap sleeves configuration and one shoulder bow configuration.

94.     The following screenshot from the "ways to wear: Style-Your-Way Mesh Dress" from David's Bridal's website shows a You Tube video of a stylist tying the panels of the

model's dress into a blouson wrap/cap sleeves configuration just like JY's dresses as well as step-by-step drawings of how to tie the dress panels to style the dress panels this way:



95.     The following screenshot from the "ways to wear: Style-Your-Way Mesh Dress" from David's Bridal's website shows a You Tube video of a stylist tying the panels of the model's dress into a one-panel/one-shoulder configuration just like JY's dresses as well as step-by-step drawings of how to tie the dress panels to style the dress this way:



96.     The following screenshot from the "ways to wear: Style-Your-Way Mesh Dress" from David's Bridal's website shows a You Tube video of a stylist tying the panels of the model's dress into a halter configuration just like JY's dresses as well as step-by-step drawings:



97.     Rather than innovate and develop its own bridesmaid dress designs, Defendants have, once again, chosen to copy JY's designs, including, most importantly, JY's distinctive Trade Dress, and marketed and passed off these designs under its "David's Bridal" brand.

98.     The copying by Defendants is so pervasive that the New Infringing Style-Your-Way Dresses appear to be actual JY dresses—with the same ornamental, non-functional and functional features.  When the New Infringing Style-Your-Way Dresses are worn in public, there can be little doubt that they would be viewed as JY products based upon the design alone, and most importantly, because they incorporate the JY Trade Dress.

99.     In response to competition from JY's innovative and successful designs, David's Bridal has chosen to infringe JY's patent, trade dress, and trademark rights through the manufacturing, marketing, promotion, use and sale of the New Infringing Style-Your-Way

Dresses, and it did so willfully to trade upon the goodwill that JY has developed in connection with its innovative and high quality dress designs.

### Infringement of JY's Patents and Trade Dress

100.    As the following side-by-side comparisons below show, David's Bridal has misappropriated JY's dress design by making, or causing to be made, marketing and selling the New Infringing Style-Your-Way Dresses in  its violation of JY's '723 patent.   These comparisons show that the New Infringing Style-Your-Way Dresses are the same, or are substantially identical to, the design claimed in the '723 Patent.

JY Aidan (#1282)          JY Aidan (#1282)          David's Bridal (#F19515 & #F4XLF19515)          JY Annabelle (#1452)

   

**JENNY YOO "AIDAN" –STYLE # 1282**
**FRONT**                                    **BACK**



**DAVID'S BRIDAL "STYLE-YOUR-WAY 6 TIE DRESS" F19515**
**FRONT**                                    **BACK**





**SIDE-BY-SIDE COMPARISON** *(from left to right)*

David's Bridal "Versa" F15782.   David's Bridal "Style-Your-Way 6 Tie" F19515.   Jenny Yoo "Aidan" #1282

**FRONT VIEW**



**BACK VIEW**



**SIDE-BY-SIDE COMPARISON**
*(left to right)*
David's Bridal "Style-Your-Way 6 Tie" F19515.    Jenny Yoo "Aidan" #1282



101.    Each of David's Bridal's New Infringing Dresses embody the JY Trade Dress identified above in product configurations that are identical to the "Aiden" and "Annabelle" Product Configurations shown above, including:

- a dress having a strapless upper garment (bodice) portion with a covering an area above the waist of the user having a front and rear portion;

- a skirt having a front and rear portion attached to the upper garment (bodice);

- two front and two rear panels attached to the skirt, which blend seamlessly with the skirt and/or the bodice, and which can be raised, lowered and attached into different configurations to create different design looks, such as a strapless configuration, classic halter configuration, Criss-Cross V-neck configuration; One Panel/One Shoulder Configuration, Blouson Wrap Configuration and One shoulder bow configuration.

102.   David's Bridal's adoption of the JY Trade Dress has caused, and is likely to cause, confusion or mistake, or to deceive consumers, purchasers, and others into thinking that David's Bridal's dress designs shown above are JY dress designs, or that they are sponsored by or affiliated with JY, when they are not.  The copying is particularly problematic because the JY designs featuring the distinctive Trade Dress are the type of products that will be used in public at various wedding and social events where third parties, who were not present when the products were purchased, will associate them with JY because they have the unmistakable JY look that results from incorporation of the JY Trade Dress.

103.   Of particular concern for JY is that JY devotes significant resources to develop its innovative dress products, and to market them to an upscale customer base.  JY's dress designs are premium-priced products compared to the dresses ordinarily sold by David's Bridal, which has a more budget conscious client base.  Part of the cachet of JY's products is the very fact that they consistently stand out from all of the other products on the market.  JY's goodwill among consumers is closely tied to its position as a leader and innovator in the bridal and bridesmaid dress industry, which causes each release of a new dress design to be highly anticipated among consumers, and allows JY to market and sell them at premium price levels.  David's Bridal's flagrant and relentless copying of JY's intellectual property rights not only allows David's Bridal to reap benefits from JY's investment and creative designs, it also threatens to diminish the very important goodwill that JY has cultivated with its dress designs, and threatens JY's ability to sell its products at premium price points.

104.    Also, since it is apparent that David's Bridal introduced the New Infringing Style-Your-Way Dresses to replace the Versa Dresses that it agreed to discontinue in the settlement of the 2016 Action with JY, Defendants' infringement of JY's intellectual property rights is purposeful, willful and unrelenting.

105.    Once again, David's Bridal's marketing and sales personnel have deliberately played up the similarities between the New Infringing Dresses and the JY Trade Dress.  The New Infringing Dresses have been marketed by David's Bridal's as the dress products that are the closest to the JY Trade Dress—for consumers who wanted a product with the distinctive JY look, but who did not want to pay for the real product.

106.    In view of the brazen and willful copying by David's Bridal's, JY is left with no choice but to file another lawsuit in order to protect its valuable intellectual property rights and the dress designs embodied in them.

### Defendants Fraudulently Induce JY To Settle Claims Against Them So That They Could Continue to Sell Dresses that Copied JY's Dress Designs

107.    Defendants' willingness to copy JY's protected designs is blatant and undeterred. Incredibly, even after they were sued by JY in the 2016 Action and entered into a Settlement Agreement with JY to discontinue the accused "Versa" dresses, Defendants recently introduced the New Infringing Dresses that copy JY's "Aiden" and "Annabelle" dresses.

108.    Prior to any discovery being conducted in the 2016 Action relating to the Versa Dresses, JY and Defendant David's Bridal agreed to mediate JY's claims.  The mediation was held on February 27, 2018.  It was attended by Jenny Yoo, Sangwoo Lee, and Maurice Ross for JY.  Mr. Ross was counsel for JY.  The mediation was attended by Lori Kindaid and at least one other person from David's Bridal.   Stephen Horace was David's Bridal's counsel at the mediation.

109.    During the mediation, David's Bridal, on behalf of all Defendants, made material misrepresentations and omissions to JY that Defendants would discontinue and remove from the marketplace the Versa Dresses that copied JY's intellectual property rights to the "Aiden" and "Annabelle" dress designs.  The misrepresentations and omissions made by David's Bridal, on behalf of all Defendants, at the mediation and in the Settlement Agreement to Plaintiff JY were made in bad faith and with the purposeful intent of inducing JY to settle its claims in the 2016 Action.

110.    The misrepresentations made by David's Bridal, on behalf of all Defendants, included the representation that David's Bridal would stop selling knock-offs of JY's dresses. Additionally, Defendants willfully omitted to tell JY that David's Bridal was, upon information and belief, planning and/or already in the process of manufacturing the New Infringing Dresses which copied JY's "Aiden" and "Annabelle" dresses called the "Style-Your-Way" dresses even though Defendants knew that this was a material fact that they were purposely omitting to tell JY and which would have caused JY not to settle the 2016 Action pursuant to the terms in the Settlement Agreement.

111.    Each of the foregoing representations and omissions made by David's Bridal, on behalf of all Defendants, was materially false, and known to be materially false, by Defendants when made by David's Bridal to Plaintiff JY during the mediation and in the Settlement Agreement.

112.    Each of these omissions by David's Bridal, was made on behalf of all Defendants in bad faith and with the purpose of inducing JY to enter into the Settlement Agreement.  These misrepresentations and omissions were collateral to the Settlement Agreement that was ultimately

entered into by David's Bridal, Inc. and Jenny Yoo Collections, Inc.  Plaintiff JY reasonably relied upon Defendants' material misrepresentations and omissions.

113.    By covering up and purposefully omitting to tell JY that it would be introducing the New Infringing Style-Your-Way Dresses in less than six months, Defendants induced JY to settle the 2016 Action, enter into a settlement agreement, accept a settlement payment that was millions of dollars less than the damages sought by JY in the 2016 Action, and grant Defendants a release of JY's claims in the 2016 based upon the false belief that Defendants would stop selling knock-off dresses.

**Defendants Breach the Settlement Agreement with JY to Settle the 2016 Action**

114.    In or about March 2018, David's Bridal entered into a settlement agreement with JY in which it agreed, inter alia, to stop selling dresses that violated JY's intellectual property rights to the "Aiden" and "Annabelle" convertible bridesmaid dress designs (the "Settlement Agreement").

115.    The Settlement Agreement was entered into by David's Bridal, Inc. and Jenny Yoo Collections, Inc.

116.    David's Bridal negotiated and entered into the Settlement Agreement on behalf of itself and CDR.  In fact, CDR is named in Paragraph 4(a) of the Settlement Agreement as one of "David's Released Parties."

117.    In Paragraph 2 of the Settlement Agreement, David's Bridal, on behalf of all Defendants agreed to: (i) "phase out of U.S. distribution" "its accused long 4-panel convertible dresses ("Disputed Versa Dresses"); and (ii) cease further factory orders for U.S. sale of the Disputed Versa Dresses, except that David's Bridal will have until June 30, 2018 to complete orders for wedding parties registered with David's Bridal as of May 15, 2018."

118.   In Paragraph 3 of the Settlement Agreement, David's Bridal, on behalf of all Defendants represented and agreed that "David's Bridal will cease U.S. sales of its Disputed Versa Dresses after December 31, 2018, and that "[i]f David's Bridal wishes to extend or otherwise continue sales of its Disputed Versa Dresses after December 31, 2018, the parties will negotiate in good faith to attempt to reach an agreement on terms for such continued sales" and "[i]f the parties have not reached an agreement on terms for such continued sales on or before December 31, 2018, then David's Bridal will remove the Disputed Versa Dresses as a product offering from its U.S. website and other U.S. media outlets on or before December 31, 2018."

119.   Just a few months after David's Bridal and JY agreed to settle JY's claims relating to the Versa Dresses that were the subject of the 2016 Action in the Settlement Agreement, in or about mid-2018, Defendants introduced dresses that once again copied JY's "Aiden" and "Annabelle" dresses, the New Infringing Style-Your-Way dresses.   By doing so, David's Bridal, on behalf of itself and all Defendants, breached Paragraphs 2 and 3 of the Settlement Agreement.

120.   Although David's Bridal agreed in Paragraph 3 of the Settlement Agreement that "[i]f David's Bridal wishes to extend or otherwise continue sales of its Disputed Versa Dresses after December 31, 2018, the parties will negotiate in good faith to attempt to reach an agreement on terms for such continued sales," David's Bridal never contacted JY or its counsel about the New Infringing Style-Your-Way Dresses before introducing them onto the market for sale in the United States.   By failing to do so, David's Bridal, on behalf of itself and all Defendants, breached Paragraph 3 of the Settlement Agreement.

121.   Like the Versa Dresses, the New Infringing Style-Your-Way Dresses are, again, substantially identical to, and incorporate, JY's patented four panel convertible "Aiden" and

"Annabelle" bridesmaid dress designs.   Specifically, the New Infringing Style-Your-Way Dresses as advertised on the David's Bridal website, are made of "soft and flowy" material and have: (i) a strapless upper garment (bodice) portion covering an area above the waist of the user having a front and rear portion; (ii) a skirt having a front and rear portion attached the upper garment (bodice); and (iii) two front panels and two rear panels which can also be easily raised, lowered and attached by hand into different configurations to create different design looks.

122.   Like the Versa Dresses, the New Infringing Style-Your-Way Dresses embody the JY Trade Dress identified above in product configurations that are identical to the "Aiden" and "Annabelle" Product Configurations, such as a strapless configuration, classic halter configuration, criss-cross neck configuration, one-panel/one-shoulder configuration, blouson wrap/cap sleeves configuration and one shoulder bow configuration.

123.   As the following screenshots show, there is no visually discernable difference between the old Versa Dresses that David's Bridal agreed to discontinue and its New Infringing Dresses called "Style-Your-Your-Way" dresses:

## DAVID'S BRIDAL COMPARISON

**David's Bridal "Versa" F15782**

**David's Bridal "Style-Your-Way 6 Tie" F19515**




**DBI "Versa" F15782**  **DBI "Style-Your-Way 6 Tie" F19515**  **DBI "Versa" F15782**  **DBI "Style-Your-Way 6 Tie" F19515**






### David's Bridal "Versa" F15782



### David's Bridal "Style-Your-Way 6 Tie" F19515



124.    David's Bridal's manufacture, marketing, distribution and sale of the New Infringing Style-Your-Way Dresses has caused and will continue to cause consumer confusion, or to cause mistake, or to deceive the consumer as to the affiliation, connection or association of David's Bridal with JY.

125.    The following is a screenshot of comments made by consumers on May 29, 2018 in posts on Instagram to a video showing the New Infringing Style-Your-Way Dresses from the David's Bridal website which demonstrate consumer confusion.  Referring to the New Infringing Dresses, one consumer says "ummm I thought they discontinued it????"  A second consumer says "it's the same one isn't it??"  A third consumer calls the New Infringing Dress depicted in the photograph David's Bridal's "replacement" of the Versa Dresses."  These comments demonstrate consumer confusion between the New Infringing Dresses and the old Versa Dresses.



126.    The following screenshot of comments made by consumers on June 4, 2018 in posts on Instagram to a photograph of the New Infringing Dresses from the David's Bridal website also demonstrates consumer confusion.  Referring to the New Infringing Dresses, one

consumer asks in a post "Why are you guys showing a dress that's discontinued?  The Versa is no longer available in most colors and sizes.  It's a great dress."  A second consumer responses and says that the New Infringing Dresses are the "new versa."  These comments demonstrate consumer confusion between the New Infringing Dresses and the old Versa Dresses.



## FIRST CLAIM FOR RELIEF

### (Trade Dress Infringement)
### (Lanham Act Section 43(a), 15 U.S.C. § 1125(a))

127.    JY incorporates and re-alleges paragraphs 1 through 126 of this Complaint.

128.    JY is the owner of all right and title to the distinctive JY Trade Dress.

129.    The JY Trade Dress is not functional. Indeed, the United States Patent Office made a determination of non-functionality upon issuing the 'D120 and 'D723 Patents to JY.

130.    As set forth above, based on extensive and consistent advertising, promotion and sales throughout the United States, the JY Trade Dress has acquired distinctiveness and enjoys secondary meaning among consumers, identifying JY as the source of these products.

131.    The character and scope of the JY Trade Dress is that the dresses are made of lightweight material with: (i) a strapless upper garment (bodice) portion covering an area above the waist of the user having a front and rear portion; (ii) a skirt having a front and rear portion attached to the upper garment (bodice); and (iii) two front panels and two rear panels with a natural soft drape that seamlessly blend with the dress regardless of whether the panels are hanging in their natural position or raised over the bodice to create the different configurations of the dress.

132.    The panels of the "Aiden" and "Annabelle" dresses are stitched into the waist seam in a particular placement and naturally hang down the skirt of the dress creating the illusion that the panels and skirt are integrated.  The panels have a natural soft drape that seamlessly blends with the dress regardless of whether the panels are hanging in their natural position or raised over the bodice to create the different configurations of the dress.  These panels can be rearranged for purpose of converting the dress into different neckline styles and inherently distinctive looks such as a strapless configuration, classic halter configuration, Criss-Cross V-neck configuration; One Panel/One Shoulder Configuration, Blouson Wrap Configuration and One shoulder bow configuration.

133.    These features of the "Aiden" and "Annabelle" dresses are distinctive in that they allow the two panels in the front and the two panels in the back panels to be seamlessly blended into the bodice of the dress.  This creates the illusion that the panels smoothly blend uninterrupted with the bodice, skirt and/or entire dress to create a singular, integrated look.  The concept of "seamless blending" means that from the point of view of an ordinary observer, it will be noticeable that the dress contains front and back panels separate from other components of the dress, which when integrated into the dress create looks that are smooth and continuous, with no

61

apparent gaps or spaces between one part or the next, and without seams or obvious joins. Thus, while the front and rear panels are noticeable to the ordinary observer as distinct components of the dress, nonetheless, they create the impression of an integrated, natural, elegant, unified dress design. Thus, JY's Trade Dress encompasses the overall look of the "Aiden" and "Annabelle" dresses and serves to identify JY as the source of these dresses to consumers.

134.    The JY Trade Dress is embodied in each different configuration of the "Aidan" and "Annabelle" dress design, including the specific design configurations shown in the paragraphs above.

135.    JY used, marketed and sold its distinctive JY Trade Dress in commerce throughout the United States since 2012. JY exclusively used the JY Trade Dress for no less than two years until 2014.

136.    As set forth above, JY has made significant expenditures to advertise the "Aiden" and "Annabelle" dresses. As also set forth above, in marketing and selling these dresses, JY has consistently endeavored to associate the JY Trade Dress with JY. These efforts include, but are not limited to, substantial advertising such as print and internet advertisements which use the tagline "one dress . . . with endless possibilities" and which include photographs of the "endless ways to tie" these dresses.

137.    As set forth above, JY has had substantial success selling the "Aiden" and "Annabelle" dresses and has in fact sold more than 100,000 of them to date.

138.    JY's extensive promotion of the distinctive JY Trade Dress has resulted in JY's acquisition of valuable, legally protected rights in the JY Trade Dress as well as considerable customer goodwill.

139.    Consumers have come to identify JY as the source of the "Aiden" and "Annabelle" dresses which embody JY's Trade Dress.    This is established by exiting consumer reviews which will be further supported by consumer surveys.

140.    As set forth above, JY has received substantial and unsolicited media coverage of its "Aiden" and "Annabelle" dresses and the elements of JY's Trade Dress have been specifically praised in the media.

141.    Numerous competitors of JY including, but not limited to, David's Bridal, Watters, Essense and Faviana, have attempted to plagiarize JY's Trade Dress and have produced numerous alternative designs for convertible dresses, but none of them feature two front and two rear panels attached to the waist that permit this elegant, seamless integration of panels into the bottom of the dress described above.  Nonetheless, there is a likelihood of consumer confusion between JY's dresses and these competitors' knock-offs.  David's Bridal, in particular, has engaged in a pattern of copying JY's Trade Dress so that it can mass produce and sell copycat dresses at a much lower price point to JY's extreme detriment.

142.    Defendants have misappropriated the JY Trade Dress by mimicking a combination of several elements of that trade dress in the New Infringing Dresses.

143.    Defendants' manufacture, marketing, distribution and sale of the New Infringing Style-Your-Way Dresses is causing, and is likely to continue to cause confusion, or mistake, and/or to deceive the consumer as to the affiliation, connection or association of David's Bridal with JY.  Consumer confusion is demonstrated by the comments made by consumers online about the New Infringing Style-Your-Way Dresses.

144.    Defendants' manufacture, distribution and sale of the New Infringing Dresses enables David's Bridal to benefit unfairly from JY's reputation and success, thereby giving

David's Bridal's New Infringing Dresses sales and commercial value they would not have otherwise.

145.    Defendants' actions constitute unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

146.    Defendants knew of the JY Trade Dress when it designed and procured its New Infringing Style-Your-Way Dresses.  Indeed, JY's Trade Dress embodied in the "Aiden" and "Annabelle" dresses was the subject of the 2016 Action against David's Bridal and the Settlement Agreement between David's Bridal, Inc. and Jenny Yoo Collections, Inc. Accordingly, Defendants' infringement has been and continues to be intentional, willful and without regard to the JY Trade Dress.

147.    JY has been and will continue to be irreparably harmed and damaged by Defendants' actions and JY lacks an adequate remedy at law to compensate for this harm.

148.    JY is informed and believes, and on that basis alleges, that Defendants have wrongfully gained profits by virtue of its infringement of the JY Trade Dress.

149.    JY also has sustained damages, including but not limited to lost sales, as a direct and proximate result of Defendants' infringement of the JY Trade Dress in an amount to be proven at trial.

150.    Because Defendants' actions have been willful, JY is entitled to treble its actual damages or David's Bridal's  profits, whichever is greater, and to an award of costs, and, this being an exceptional case in view of David's Bridal's  willful infringement, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## SECOND CLAIM FOR RELIEF

### (Common Law Trade Dress Infringement and Unfair Competition)

151.    JY incorporates and re-alleges paragraphs 1 through 150 of this Complaint.

152.     As set forth in detail above in Paragraphs 57 to 85, JY's Trade Dress is distinctive and/or has acquired secondary meaning.

153.     Defendants' use of these infringing designs on dresses which it manufactures, distributes, markets and sells is likely to cause confusion, or to cause mistake, or to deceive the consumer as to the affiliation, connection or association of David's Bridal with JY, or as to the origin, sponsorship, or approval by JY of David's Bridal's goods, services or commercial activities.

154.     The JY Trade Dress is not functional. Indeed, the United States Patent Office made a determination of non-functionality upon issuing the 'D120 and 'D723 Patents to JY.

155.     Defendants' use of the JY Trade Dress constitutes common law trade dress infringement and unfair competition with JY under the common law of the State of New York.

156.     Defendants have infringed the JY Trade Dress by manufacturing, distributing, marketing and selling the New Infringing Style-Your-Way Dresses.

157.     Defendants' use of JY Trade Dress enables David's Bridal to benefit unfairly from JY's reputation and success, thereby giving the New Infringing Style-Your-Way Dresses sales and commercial value they would not have otherwise.  Further, David's Bridal unfairly competes with JY by selling its infringing dress products at a price substantially below the price that JY charges for its substantially identical dresses to the same pool of wholesale and retail customers.

158.     Prior to Defendants' first use of the infringing dress designs, Defendants were aware of JY's business and had either actual notice and knowledge, or constructive notice of the JY Trade Dress.  Indeed, as set forth above, JY previously sued Defendants in 2016 asserting claims based upon the JY Trade Dress.   In or about March 2018, Defendants settled the claims

in the 2016 Action in bad faith so that they could continue to sell knock-offs of the "Aiden" and "Annabelle" dresses even after the settlement.

159.    Defendants' unauthorized use of the JY Trade Dress has caused, and will continue to cause, confusion or mistake among consumers as to the origin, sponsorship or approval of the New Infringing Style-Your-Way Dresses and/or confusion or mistake as to any affiliation, connection or association between JY and David's Bridal.

160.    JY is informed and believes, and on that basis alleges, that Defendant's infringement of the JY Trade Dress as described herein has been and continues to be intentional, willful and without regard to JY's rights in the JY Trade Dress.

161.    JY is informed and believes, and on that basis alleges, that Defendants have gained profits by virtue of its infringement of the JY Trade Dress.

162.    JY has suffered and will continue to suffer irreparable harm from Defendants' infringement of the JY Trade Dress and related unfair competition insofar as JY's invaluable good will is being eroded by Defendants' continuing infringement and unfair competition. JY has no adequate remedy at law to compensate it for the loss of business reputation, customers, market position, confusion of potential customers and good will flowing from the Defendants' infringing and unfair activities. JY is entitled to an injunction against Defendants' continuing infringement of the JY Trade Dress.  Unless enjoined, Defendants will continue thei infringing conduct.

163.    Because Defendants' actions have been committed with intent to damage JY and to confuse and deceive the public, JY is entitled to punitive damages, in addition to any actual or compensatory damages.

## THIRD CLAIM FOR RELIEF

### (Infringement of the 'D723 Patent)

164.     JY incorporates and re-alleges paragraphs 1 through 163 of this Complaint.

165.     The 'D723 Patent claims the design as shown in the drawings contained therein. Each of the New Infringing Style-Your-Way Dresses is the same, or is substantially identical to, the design claimed in the 'D723 patent as shown in the drawings contained therein. The following comparison of drawings contained in the '723 patent to the New Infringing Dresses shows that each of the New Infringing Style-Your-Way Dresses is the same, or is substantially identical to, the design claimed in the '723 patent.

*David's Bridal Mesh Convertible - Styles # F19515*



166.    Comparing the drawings in the patents with the infringing products as shown above, an ordinary observer with an understanding of the relevant prior art in the bridal gown industry, would be deceived into believing that each of the New Infringing Dresses is the same as the patented design of the 'D723 patent.

167.    The patented design of the 'D723 patent is the same, or substantially identical to, the patented design of the D'120 patent.

168.    Each of the New Infringing Style-Your-Way Dresses is identical to, or substantially the same as, the patented design of the 'D723 patent regardless of the length of such New Infringing Style-Your-Way Dress as worn on a human or otherwise displayed or used. Each of the New Infringing Dresses would infringe the 'D723 patent regardless of whether it is worn by a human as a short dress with length ending at or above the knees, or a long dress, with length ending below the knee, including, but not limited to, floor length.

169.    Defendants have infringed and continues to infringe 'D723 Patent by using, selling and/or offering to sell, in the United States and/or importing into the United States the New Infringing Dresses.

## FOURTH CLAIM FOR RELIEF

### (Infringement of the 'D120 Patent)

170.    JY incorporates and re-alleges paragraphs 1 through 169 of this Complaint.

171.    The 'D120 Patent claims the design as shown in the drawings contained therein. Each of the Infringing Products is the same, or is substantially identical to, the design claimed in the 'D120 patent as shown in the drawings contained therein. The following comparison of drawings contained in the 'D120 patent to the New Infringing Dresses shows that each of the

New Infringing Dresses is the same, or is substantially identical to, the design claimed in the '120 Patent:

*David's Bridal Mesh Convertible - Styles # F19515*



172.    Comparing the drawings in the patents with the infringing products as shown above, an ordinary observer, with an understanding of the relevant prior art in the bridal gown industry, would be deceived into believing that each of the New Infringing Dresses is the same as the patented design of the 'D120 Patent.

173.    Each of the New Infringing Dresses is identical to, or substantially the same as, the patented design of the 'D120 Patent regardless of the length of such New Infringing Dress as worn on a human or otherwise displayed or used. Each of the New Infringing Dresses would infringe the 'D120 Patent regardless of whether it is worn by a human as a short dress with

length ending at or above the knees, or a long dress, with length ending below the knee, including, but not limited to, floor length.

174.    Defendants have infringed and continues to infringe the 'D120 Patent by using, selling and/or offering to sell in the United States, and/or importing into the United States the New Infringing Dresses.

### FIFTH CLAIM FOR RELIEF

### (Unfair Business Practices Under New York General Business Law § 349.)

175.    JY incorporates and re-alleges paragraphs 1 through 174 of this Complaint.

176.    The acts of Defendants described above constitute unfair business practices in violation of New York General Business Law § 349.

177.    JY has valid and protectable prior rights in the JY Trade Dress. The JY Trade Dress does not serve any function. The JY Trade Dress identifies JY as the source of its bridesmaid dresses embodying the JY Trade Dress. The JY Trade Dress is inherently distinctive, and through JY's extensive commercial use, has come to be associated solely with JY as the source of the bridesmaid dresses on which it is used.

178.    Defendants' infringing use of the JY Trade Dress is likely to cause confusion as to the source of David's Bridal's products and is likely to cause others to be confused or mistaken into believing that there is a relationship between David's Bridal and JY or that David's Bridal's products are affiliated with or sponsored by JY.

179.    The above-described acts and practices by Defendants are likely to mislead or deceive the general public. Further, the above-described acts and practices by Defendants cause substantial harm to the general public. If Defendants are permitted to repeatedly engage in the creation of "knock off" fashion products with impunity, this will ultimately cause substantial

harm to the viability of the fashion industry within the City of New York and the State of New York as a whole, resulting in potential loss of jobs, reduction in governmental tax revenues, and loss of substantial economic benefits for the general public. Therefore, the above-described acts and practices by Defendants constitute fraudulent, deceptive and unfair business practices in violation of New York General Business law § 349.

180.    The above-described acts constitute unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), trade dress infringement under Section 32 of the Lanham Act, 15 U.S.C. §§ 1125(a) and 1114, and trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. §1114, and are therefore unlawful acts in violation of New York General Business Law§ 349.

181.    Defendants acted willfully and intentionally in making and selling the New Infringing Dresses, with full knowledge of JY's prior rights in the distinctive JY Trade Dress, and with an intent to cause confusion or mistake or to deceive customers into believing that there is an affiliation between David's Bridal and JY or between David's Bridal brand bridal dresses and JY's bridal dresses. Defendants willfully and in bad faith divert sales from JY by selling its infringing copies of JY's designs at a price that is significantly lower than the price at which such consumers could purchase JY's authentic products. The unlawful and fraudulent business practices of Defendants described above present a continuing threat to, and are meant to deceive members of, the public in that Defendants continues to promote their products by wrongfully trading on the goodwill of the JY Trade Dress.

182.    As a direct and proximate result of these acts, Defendants have received profits, and will continue to profit from, the strength of the JY Trade Dress.

183.    As a direct and proximate result of Defendants' wrongful conduct, JY has been injured in fact and has lost sales, money and profits, and such harm will continue unless Defendants' acts are enjoined by the Court.  JY has no adequate remedy at law for Defendants' continuing violation of JY's rights.

184.    Defendants should be required to restore to JY any and all profits earned as a result of its unlawful and fraudulent actions, or provide JY with any other restitutionary relief as the Court deems appropriate.

### SIXTH CLAIM FOR RELIEF

### (Breach of Contract Against David's Bridal, Inc.)

185.    JY incorporates and re-alleges paragraphs 1 through 184 of this Complaint.

186.    In or about March 2018, David's Bridal, Inc. and Jenny Yoo Collections, Inc. entered into a settlement agreement with JY in which David's Bridal agreed to stop selling dresses that violated JY's intellectual property rights to the "Aiden" and "Annabelle" convertible bridesmaid dress designs (the "Settlement Agreement").  The Settlement Agreement is a valid and enforceable agreement.

187.    JY and David's Bridal agreed to keep the Settlement Agreement confidential "except: . . . (iii) if a party brings a proceeding to enforce its rights under this agreement" as set forth in Paragraph 7(iii).  This is a proceeding to enforce JY's rights under the Settlement Agreement.

188.    The Settlement Agreement concerned "JY's Claimed Rights" in Patent D'120, Patent D'723, and unregistered trade dress rights relating to certain 4-panel convertible dresses.

189.    In Paragraph 2 of the Settlement Agreement, David's Bridal agreed to: (i) "phase out of U.S. distribution" of "its accused long 4-panel convertible dresses ("Disputed Versa

Dresses"); and (ii) cease further factory orders for U.S. sale of the Disputed Versa Dresses, except that David's Bridal will have until June 30, 2018 to complete orders for wedding parties registered with David's Bridal s of May 15, 2018."

190.    In Paragraph 3 of the Settlement Agreement, David's Bridal agreed that "David's Bridal will cease U.S. sales of its Disputed Versa Dresses by December 31, 2018."

191.    In Paragraph 3 of the Settlement Agreement, David's Bridal agreed that "[i]f David's Bridal wishes to extend or otherwise continue sales of its Disputed Versa Dresses after December 31, 2018, the parties will negotiate in good faith to attempt to reach an agreement on terms for such continued sales."  David's Bridal further agreed, on behalf of all Defendants, that "[i]f the parties have not reached an agreement on terms for such continued sales on or before December 31, 2018."

192.    In or about mid-2018, David's Bridal materially breached the Settlement Agreement by introducing dresses that once again copied JY's "Aiden" and "Annabelle" dresses, called the Style-Your-Way Dresses.  By doing so, David's Bridal breached Paragraphs 2 and 3 of the Settlement Agreement in which they agreed to phase David's Bridal's 4-panel convertible dresses out of United States distribution, cease further factory orders for U.S. sale of those dresses, and cease all United States sales of the dresses by December 31, 2018.

193.    Like the Versa Dresses, the New Infringing Style-Your-Way Dresses are, again, substantially identical to, and incorporate, JY's patented four panel convertible "Aiden" and "Annabelle" bridesmaid dress designs in violation of "JY's Claimed Rights" as defined in the Settlement Agreement. Specifically, the New Infringing Style-Your-Way Dresses as advertised on the David's Bridal website, are made of "soft and flowy" material and have: (i) a strapless upper garment (bodice) above the waist of the user having a front and rear portion; (ii) a skirt

having a front and rear portion attached the upper garment (bodice); and (iii) two front panels and two rear panels which can also be easily raised, lowered and attached by hand into different configurations to create different design looks.  Also, like the Versa Dresses, the New Infringing Style-Your-Way Dresses embody the JY Trade Dress identified above in product configurations that are identical to the "Aiden" and "Annabelle" Product Configurations, such as a strapless configuration, classic halter configuration, criss-cross neck configuration, one-panel/one-shoulder configuration, blouson wrap/cap sleeves configuration and one shoulder bow configuration

194.    There is no visually discernable difference between the Versa Dresses and the New Infringing Style-Your-Way Dresses.  Consumer comments online to the New Infringing Style-Your-Way Dresses demonstrate that consumers instantly believed that they were the Versa Dresses that David's Bridal agreed to discontinue.

195.    By introducing the New Infringing Style-Your-Way Dresses in mid-2018, David's Bridal also breached Paragraph 3 of the Settlement Agreement.  David's Bridal failed to "negotiate in good faith" with JY "[i]f David's Bridal wishes to extend or otherwise continue sales of its Disputed Versa Dresses after December 31, 2018: in an "attempt to reach an agreement on terms for such continued sales." The New Infringing Style-Your-Way Dresses were introduced by David's Bridal into the United States' market with no notice to JY or its counsel.

196.    Additionally, David's Bridal has anticipatorily breached Paragraph 5 of the Settlement Agreement in which David's Bridal agreed that it would provide a declaration on or before January 15, 2019 under penalty of perjury from an officer or director certifying that "(a) David's Bridal ceased further factory orders for U.S. sale of the Disputed Versa Dresses by May

15, 2018, except to complete orders for wedding parties registered with David's Bridal as of May 15, 2018" and "(b) David's Bridal made no factory orders for U.S. sale of Disputed Versa Dresses after June 30, 2018." Since Defendants, in fact, introduced dresses that copy its Versa Dresses onto the market in 2018 called the Style-Your-Way Dresses to replace the Versa Dresses, they will be unable to provide the declaration required.

197.    Plaintiff JY has been damaged as a result of David's Bridal's breaches of the Settlement Agreement in that JY agreed to settle the 2016 Action and provide Defendants with a release of JY's claims in that action. Also, by settling the 2016 Action, JY agreed to forgo its rights to seek actual damages on its claims based upon Defendants' violations of JY's Claimed Rights, as well as treble damages, prejudgment interest, reasonable funds for future corrective advertising, and restitutionary relief which would amount to multiple millions of dollars. Instead, JY agreed to settle its claims in the Settlement Agreement for a heavily discounted amount.   JY only agreed to accept this reduced settlement amount because David's Bridal agreed to stop selling dresses that copied JY's "Aiden" and "Annabelle" dresses.

198.    Due to David's Bridal's breach of the Settlement Agreement, JY is entitled to enforce the terms of the Settlement Agreement and obtain an Order permanently enjoining Defendants from violating the terms of the Settlement Agreement by manufacturing and selling dresses that infringe upon JY's Claimed Rights.

199.    Alternatively, Plaintiff JY is entitled to monetary damages.  JY has been damaged by Defendants' breach of the Settlement Agreement in that JY expended costs, attorneys' fees, and mediation fees to settle the matter with David's Bridal in the Settlement Agreement.  Then, due to David's Bridal's breach of the Settlement Agreement, JY was forced to incur the costs

associated with a new mediation pursuant to the Settlement Agreement and bringing a new lawsuit.

200.    JY has also been damaged by David's Bridal's breach of the Settlement Agreement in that Defendants continue to sell dresses which infringe upon JY's intellectual property rights at a lower price point causing JY to lose sales and profits associated with those sales.

## SEVENTH CLAIM FOR RELIEF

### (Fraudulent Inducement Against All Defendants)

201.    Plaintiff JY repeats and realleges the allegations contained in paragraphs 1 through 200 above as if fully set forth herein.

202.    Plaintiff JY and Defendant David's Bridal agreed to mediate JY's claims in the 2016 Action.

203.    During the mediation, David's Bridal, on behalf of all Defendants, made material misrepresentations and omissions to JY that Defendants would discontinue and remove from the marketplace the Versa Dresses that copied JY's intellectual property rights to the "Aiden" and "Annabelle" dress designs.  The misrepresentations and omissions made by David's Bridal, on behalf of all Defendants, at the mediation and in the Settlement Agreement to Plaintiff JY were made in bad faith and with the purposeful intent of inducing JY to settle its claims in the 2016 Action.

204.    The misrepresentations made by David's Bridal, on behalf of all Defendants, included the representation that David's Bridal would stop selling knock-offs of JY's dresses. Additionally, Defendants willfully omitted to tell JY that David's Bridal was, upon information and belief, planning and/or already in the process of manufacturing the New Infringing Dresses which copied JY's "Aiden" and "Annabelle" dresses called the "Style-Your-Way" dresses even

though Defendants knew that this was a material fact that they were purposely omitting to tell JY and which would have caused JY not to settle the 2016 Action pursuant to the terms in the Settlement Agreement.

205.    Each of the foregoing representations and omissions made by David's Bridal, on behalf of all Defendants, was materially false, and known to be materially false, by Defendants when made by David's Bridal to Plaintiff JY.

206.    Defendants willfully made these material misrepresentations and omissions to Plaintiff JY at the mediation to fraudulently induce JY discontinue the 2016 Action, grant Defendants a release, and forgo JY's right to recover millions of dollars in damages in the 2016 Action.

207.    JY reasonably relied upon Defendants' material misrepresentations and omissions.  Among other things, the fact that Defendants, upon information and belief, were already in the process of manufacturing a new knock-off dress that copied the Versa Dresses was solely within the knowledge of Defendants.

208.    As a result of Defendants' misrepresentations and omissions, JY agreed to settle for a lesser monetary amount of damages than JY because it believed that it would not continue to suffer the serious financial harm resulting from customers buying "knock off" dresses from David's Bridal at a much lower price point.  David's Bridal's representations that it would take infringing dresses off the market were false.  David's Bridal omitted to tell JY that a new dress that once again incorporate her patented design and copied JY's trade dress would be introduced after the parties settled.

209.    Plaintiff JY has been damaged as a result of its reliance upon Defendants' misrepresentations and omissions in that JY agreed to settle the 2016 Action and provide

Defendants with a release of JY's claims in that action.  Also, by settling the 2016 Action, JY agreed to forgo its rights to seek actual damages on its claims based upon Defendants' violations of JY's Claimed Rights, as well as treble damages, prejudgment interest, reasonable funds for future corrective advertising, and restitutionary relief which would amount to multiple millions of dollars.   Plaintiff JY has also been damaged in that JY expended costs, attorneys' fees, and mediation fees to settle the matter with David's Bridal in the Settlement Agreement.

210.    Plaintiff JY is also entitled to punitive damages against Defendants based upon their wanton, willful and malicious conduct.

### EIGHTH CLAIM FOR RELIEF

### (Unjust Enrichment Against All Defendants)

211.    Plaintiff JY repeats and realleges the allegations contained in paragraphs 1 through 210 above as if fully set forth herein.

212.    Defendants have misappropriated the labors and expenditures of JY in designing, manufacturing, selling and marketing the New Infringing Style-Your-Way Dresses in these Dresses are knock-offs of JY's "Aiden" and "Annabelle" dresses.   Defendants' misappropriation of the labors and expenditures of JY was done in bad faith.

213.    As a result of Defendants' misappropriation of the labors and expenditures of JY in designing, manufacturing, selling and marketing the New Infringing Style-Your-Way Dresses, Defendants have caused and/or are likely to cause confusion or deceive consumers as to the origin of the dresses in that consumers will be misled into thinking that the David's Bridal dresses sold at a much lower price point are JY designs.

214.    Lost profits that JY would have earned in the absence of Defendants' wrongful acts and omissions.   JY's lost profits were proximately caused by Defendants' wrongful acts.

215.    The circumstances are such that in equity and good conscience the defendant is liable to JY for damages in an amount yet undetermined in excess of the jurisdictional limits of this Court plus interest that continues to accrue at the standard rate of nine percent per annum.

## **PRAYER FOR RELIEF**

WHEREFORE, JY prays for relief, as follows:

     1.     A judgment that Defendants have infringed JY's asserted design patents, the JY Trade Dress and JY's asserted trademarks;

     2.     An Order and judgment preliminarily and permanently enjoining Defendants and their officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or in concert with them, and their parents, subsidiaries, divisions, successors and assigns, from further acts of infringement of JY's asserted design patents, the JY Trade Dress and JY's asserted trademarks;

     3.     A judgment awarding JY damages in an amount to be determined at trial for Defendants' infringement of JY's asserted design patents, the JY Trade Dress and JY's asserted trademarks;

     4.     A judgment awarding JY all damages adequate to compensate for Defendants' infringement of JY's asserted design patents, the JY Trade Dress and JY's asserted trademarks, and in no event less than a reasonable royalty for Defendants' acts of infringement, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

     5.     A judgment awarding JY all damages, including treble damages, based on any design patent infringement found to be willful, pursuant to 35 U.S.C. § 284, together with prejudgment interest;

     6.     An Order preliminarily and permanently enjoining Defendants and their officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or in concert with them, and their parents, subsidiaries, divisions, successors

and assigns, from directly or indirectly infringing the JY Trade Dress; from passing off Defendants' bridal dresses as being associated with and/or sponsored or affiliated with JY and its trademarks; from committing any other unfair business practices directed toward obtaining for themselves the business and customers of JY; and from committing any other unfair business practices directed toward devaluing or diminishing the brand or business of JY;

7.     Actual damages suffered by JY as a result of Defendants' unlawful conduct, in an amount to be proven at trial, as well as prejudgment interest as authorized by law;

8.     Reasonable funds for future corrective advertising;

9.     An accounting of Defendants' profits pursuant to 15 U.S.C. § 1117;

10.    A judgment trebling any damages award pursuant to 15 U.S.C. § 1117;

11.    Restitution against Defendants and in favor of JY, including disgorgement of wrongfully obtained profits and any other appropriate relief;

12.    Punitive damages in an amount to be determined at trial;

13.    Costs of suit and reasonable attorneys' fees; and

14.    Any other remedy to which JY may be entitled under federal law, state law, or common law.

Dated: New York, New York
October 26, 2018

BARTON LLP

By: _____
    Maurice N. Ross (MR 6852)
    Laura-Michelle Horgan (LR 7799)

420 Lexington Avenue, 18th Floor
New York, NY 10170
mross@bartonesq.com
lmhorgan@bartonesq.com
*Tel.:* (212) 687-6262
*Fax:* (212) 687-3667

*Attorneys for Plaintiff*
*Jenny Yoo Collection, Inc.*

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, JY hereby demands trial by jury on all issues raised by the Amended Complaint.

Dated: New York, New York
      October 26, 2018

BARTON LLP

By: _____
    Maurice N. Ross (MR 6852)
    Laura-Michelle Horgan (LR 7799)

420 Lexington Avenue, 18th Floor
New York, NY 10170
mross@bartonesq.com
lmhorgan@bartonesq.com
*Tel.:*  (212) 687-6262
*Fax:*  (212) 687-3667

*Attorneys for Plaintiff*
*Jenny Yoo Collection, Inc.*