USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/16/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JENNY YOO COLLECTION, INC.,

    Plaintiff,

-against-

DAVID'S BRIDAL, INC., et al.,

    Defendants.

18-CV-9926 (PGG) (BCM)

**DISCOVERY ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

In this action, filed on October 26, 2018, plaintiff Jenny Yoo Collection, Inc. (JY) asserts claims of trade dress infringement, design patent infringement, breach of contract, fraudulent inducement, and unjust enrichment against defendants David's Bridal, Inc. (DB) and Clayton, Dubilier & Rice, LLC (CDR), arising out of DB's marketing, promotion, and sale of its "new 'Style-Your-Way' [SYW] dresses," which allegedly "incorporate JY's protected dress design and infringe upon its intellectual property rights." Am. Compl. (Dkt. No. 42) ¶ 7. Specifically, JY alleges that defendants' SYW dresses infringe its rights in its "wildly popular four-panel convertible bridesmaid dresses called the 'Aiden' and 'Annabelle' dresses." *Id.* ¶ 2.[1]

This is the second action brought by JY against DB and CDR in this District. In the first, filed on April 8, 2016 (the 2016 Action), JY asserted claims of trade dress infringement, design patent infringement, and related claims against DB and CDR arising out of DB's marketing, promotion, and sale of its "Versa" line of four-panel convertible dresses. *See* Compl., *Jenny Yoo Collection, Inc. v. David's Bridal Inc., et al.*, No. 16-CV-2647-VSB (S.D.N.Y. April 8, 2016). In

---

[1] Plaintiff's convertible bridesmaid dresses have four panels of lightweight fabric hanging from the waist of the garment, blending with the skirt. Am. Compl. ¶ 2. At the wearer's option, one or more of the panels can be raised and rearranged around the upper body "for purposes of converting the dress into different neckline style configurations to create inherently distinctive and sophisticated looks." *Id.*; *see also id.* ¶¶ 70-82 (showing various configurations of the Aiden (sometimes called "Aidan") and Annabelle dresses).

the 2016 Action, as here, JY alleged that defendants' dresses infringed its rights in the Aiden and Annabelle convertible dresses. *Id.* ¶¶ 2, 35-46.

JY and DB resolved the 2016 Action through execution of a Confidential Settlement Agreement dated April 4, 2018 (the 2018 Agreement) (Dkt. No. 63-1), in which DB agreed to pay JY a confidential sum and to "phase out of U.S. distribution" the allegedly infringing Versa dresses, including by ceasing U.S. sales of those dresses by the end of 2018. 2018 Ag. ¶¶ 2-3. JY, for its part, released DB and CDR from, *inter alia*, "any and all claims and causes of action of every kind that JY brought or could have brought in [the 2016 Action], including but not limited to claims relating to the development, manufacture, use, importation, sale or promotion of any David's Bridal products," except for claims "arising under this Agreement." *Id.* ¶ 4.

Now before the Court is the parties' joint letter dated November 20, 2019 (Joint Ltr.) (Dkt. No. 99), in which JY seeks an order compelling defendants to produce discovery regarding the development and marketing of the Versa dresses, and other "events prior to January 1, 2017," notwithstanding that (a) JY does not assert any infringement claims related to the Versa dresses in this action, and (b) the SYW dresses – which are in dispute in this action – "were designed in 2017 and introduced in 2018." Joint Ltr. at 4; *see also* Am. Compl. ¶¶ 7, 9 (SYW dresses were introduced to the U.S. market in "mid-2018," "less than two months after the settlement").

For the reasons set forth below, JY's application is DENIED.[2]

## Standard of Law

The scope of discovery is follows: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs

---

[2] The parties' joint letter also raised a dispute concerning defendants' reliance on Local Patent Rules 5 and 10. The Court resolved that dispute in defendants' favor on the record during a telephonic conference held on November 27, 2019.

of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Under Rule 26, a district court has broad discretion to impose limitations or conditions on discovery, which extends to granting or denying motions to compel or for protective orders on 'just terms.'" *Capstone Logistics Holdings, Inc. v. Navarrete*, 2018 WL 6786237, at *8 (S.D.N.Y. Dec. 13, 2018) (Moses, M.J.) (internal citations, quotation marks, and editorial marks omitted). *See also EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) ("Of course, as in all matters relating to discovery, the district court has broad discretion to limit discovery in a prudential and proportionate way."), *aff'd sub nom. Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134 (2014); *Lindsey v. Butler*, 2017 WL 4157362, at *3 (S.D.N.Y. Sept. 18, 2017) ("Federal district courts have broad discretion in deciding motions to compel.").

**Analysis**

Defendants' objection to producing the requested discovery is simple: since the SYW dresses were "designed in 2017 and introduced in 2018," the requested discovery improperly relates only to the discontinued Versa dresses, as to which JY "released and dismissed" its claims "with prejudice" in the 2018 Agreement. Joint Ltr. at 4-5. Therefore, defendants conclude, "[d]iscovery into the design and sale" of the Versa dresses "prior to the [2018] Agreement – dating back to 2012 – is not relevant to any claim in [this action] and is disproportionate to the needs of the case." *Id*. at 5. During the November 27, 2019 conference, DB also noted that one of the primary reasons it entered into the 2018 Agreement was to avoid the burden and expense associated with the very discovery now sought by JY.

JY asserts that it is entitled to pre-2017 discovery, including discovery concerning the Versa dresses, for three principal reasons. First, pointing to its breach of contract claim (which alleges that DB breached the 2018 Agreement by introducing the SYW dresses) and its fraudulent inducement claim (which alleges that defendants fraudulently induced JY into executing the 2018 Agreement by concealing their development of and launch plans for the SYW dresses), JY argues that, if it prevails on either claim, it may elect rescission as a remedy, in which case it will be entitled to seek damages based on defendants' pre-agreement sales of the Versa dresses. Joint Ltr. at 2. Second, JY contends that regardless of whether it has actually rescinded the 2018 Agreement, its fraudulent inducement damages in this action may include "the amount it would likely have achieved either in litigation or a settlement [of the 2016 Action] in the absence of the fraud," *id*. at 2, which permits it, in effect, to obtain the same discovery now that it would have been entitled to before settling the 2016 Action. Third, JY asserts that the Versa and SYW dress lines are "substantially identical," *id*., and therefore that – even if its damages here are limited to those flowing from the newer SYW dresses – discovery into the development and design of the Versa dresses is relevant to the willfulness of defendants' infringing conduct. *Id*.[3]

---

[3] The Versa dresses, like plaintiff's Aiden and Annabelle dresses, had four lightweight panels hanging from the skirt, which could be used to create customized neckline configurations. According to plaintiff, defendants' new SYW dresses "include the same two front and two rear panels stitched into the waist seam," Am. Compl. ¶ 10, as well as other distinctive design features modeled on plaintiff's dresses. *See id*. ¶¶ 131-33. Plaintiff alleges that consumers confuse the new SYW dresses (a) with the old Versa dresses, which DB agreed to take off the market, and (b) with plaintiff's Aiden and Annabelle dresses, which they, like the Versa dresses, were intentionally designed to mimic. *Id*. ¶¶ 9, 131-35, 153-54. Defendants counter that the SYW dresses use "6 narrower and rectangular hanging ties, distinguishing the design from both the . . . Versa dresses and the JY patented designs," *see* DB Mem. of Law in Supp. of Mtn. to Dismiss (Dkt. No. 62), at 2, and that, in any event, the panels on a convertible dress are functional, "insofar as they permit the dress to be converted" into different neckline styles. *Id*. at 7-8. Defendants have moved to dismiss most of plaintiff's claims in this action pursuant to Fed.

JY's first theory, based on its potential future rescission of the 2018 Agreement, cannot justify discovery into defendants' pre-agreement sales of the Versa dresses. JY acknowledges that it has not rescinded the 2018 Agreement. Joint Ltr. at 2. Moreover, JY does not seek rescission of that agreement as a remedy here. *See* Am. Compl. at 81-83 (seeking injunctive relief and damages). "[A] defrauded party can elect between rescission on the one hand and ratification and suit for damages on the other," *Cresswell v. Sullivan & Cromwell*, 668 F. Supp. 166, 170-71 (S.D.N.Y. 1987), but if that party chooses to rescind, "[t]he right to rescind must be exercised promptly after the injured party learns of the wrong." *Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 4613390, at *15 n.16 (S.D.N.Y. Aug. 31, 2016) (Moses, M.J.) (quoting *Sang Lan v. AOL Time Warner, Inc.*, 2013 WL 1820289, at *3 (S.D.N.Y. Apr. 30, 2013); *see also Asset Mgmt. Assocs. of New York, Inc. v. Emerson Telecomm. Prod. LLC*, 2011 WL 318100, at *4 (E.D.N.Y. Jan. 25, 2011) (rescission claims must generally be made "immediately upon the discovery of fraud or mistake"); *Strong v. Strong*, 102 N.Y.69, 73, 5 N.E. 799, 800 (1886) ("[T]he right to rescind a contract for fraud must be exercised immediately upon its discovery."). Thus, even assuming that JY succeeds on its breach of contract and/or fraudulent inducement claims, it is not at all clear that it will be entitled to rescind the 2018 Agreement at that juncture. The theoretical possibility that JY could succeed in doing so, at some point in the future, is too remote to justify the broad discovery JY now seeks.

JY's second theory is that even if it does not rescind, "it would be entitled to pursue a claim for its damages proximately resulting from the fraudulent inducement, including the amount it would likely have achieved either in litigation or a settlement in the absence of the fraud." Joint Ltr. at 2. JY is correct that, under New York law, "where a plaintiff was

---

R. Civ. P. 12(b)(6), including its claims for trade dress infringement, breach of contract, and fraudulent inducement. (Dkt. Nos. 54, 58.)

5

fraudulently induced to settle a disputed claim, the proper measure of damages is the value of the claim extinguished by the settlement." *Edrei v. Copenhagen Handelsbank A/S*, 1992 WL 322027, at *4 (S.D.N.Y. Oct. 29, 1992) (collecting cases). However, the possibility that a plaintiff could become entitled to such damages in the future does not automatically entitle that plaintiff to full-blown damages discovery in the early stages of the case.

In *Edrei*, the plaintiff (a guarantor) asserted a claim of fraudulent inducement against the defendant (a bank) based on the bank's alleged fraudulent inducement of the guarantor into settling a previous lawsuit he had brought against the bank. 1992 WL 322027, at *1. In the second suit, the guarantor sought discovery into the value of a lender liability claim that he released when he settled the first suit, and the bank sought a protective order, on the ground that the underlying claim was "irrelevant to plaintiff's fraudulent inducement claim." *Id.* The *Edrei* court denied the bank's motion for a protective order, recognizing that the requested discovery might "require full litigation of the lender liability claims that were supposed to have been settled," and explaining that "if the settlement was procured by fraud, plaintiff must have an opportunity to demonstrate the damages he suffered." *Id.* at *6. However, in light of the "quite distinct" nature of the two issues ("liability on the fraudulent inducement claim," and "the merit and value of the [previously settled] lender liability claim"), and the fact that the damages issue would "not be reached at all" if the plaintiff did not establish liability for fraudulent inducement, the court opted to bifurcate trial into liability and damages phases, and "stay [] all discovery concerning damages pending a finding of liability." *Id.* That decision proved to have been efficient when the *Edrei* court later granted summary judgment in favor of defendant on plaintiff's fraudulent claim. *See Edrei v. Copenhagen Handelsbank A/S*, 1995 WL 675479, at *12 (S.D.N.Y. Nov. 14, 1995), *aff'd*, 104 F.3d 355 (2d Cir. 1996).

In this case, the same efficiency interests – as well as the proportionality concerns now explicitly incorporated into Rule 26(b)(2) – counsel against permitting JY to expand the scope of discovery by four years (back to 2012) in order to inform its potential damages for a fraudulent inducement claim that has not yet survived defendants' motions to dismiss. Even if those motions are denied, the claim may fail at summary judgment or at trial. On the present record, therefore, it would be inefficient to permit JY to expand the scope of discovery in this action to match the discovery to which it would have been entitled had it not settled the 2016 Action. If JY prevails on its fraudulent inducement claim at summary judgment, it may renew its request for pre-2017 discovery. Alternatively, if and when the case approaches trial, JY may request that the district judge bifurcate trial of the fraudulent inducement claim and – if it prevails at the liability phase – permit damages discovery prior to the damages phase.

Plaintiff's third theory as to why it should be allowed pre-2017 discovery (articulated for the first time during the November 27, 2019 conference) is that, because the SYW dresses are "substantially identical" to the withdrawn Versa dresses, discovery concerning the design and development of the Versa dresses is relevant to the willfulness of defendants' alleged infringement for purposes of enhanced damages under 35 U.S.C. § 284 and 15 U.S.C. § 1117. In other words, JY seeks to use evidence that defendants willfully infringed JY's trade dress and patent rights when they designed and sold the Versa dresses in order to establish that they willfully infringed the same trade dress and patent rights when they designed and sold the substantially identical SYW dresses.

Once again, I conclude that plaintiff has not developed an adequate foundation for the expanded discovery it seeks. Among other things, "the asserted near-identity" of the dresses "is

not conceded" by defendants and has not been demonstrated "to a convincing degree." *Zen Design Grp., Ltd. v. Scholastic, Inc.*, 2019 WL 4891206, at *3 (E.D. Mich. Mar. 26, 2019).

In *Zen Design*, as here, the plaintiff settled a dispute over an allegedly infringing product ("Accused Device #1") and then sued the same defendant, Scholastic, over a second allegedly infringing product ("Accused Device #2"). 2019 WL 4891206, at *1.[4] Attorney Siff advised Scholastic with respect to both accused devices. *Id.* In the litigation arising from the second device, the court found that Scholastic had waived privilege with respect to Siff's pre-suit communications and work product concerning Accused Device #2. *Id.* However, the court declined to compel production of Siff's earlier communications and work product concerning Accused Device #1, because these materials were "not relevant to the court's willfulness inquiry in this case." *Id*.

Plaintiff Zen Design sought reconsideration, arguing that the two accused devices were "essentially identical," and therefore that communications and work product as to either one was within the scope of the waiver and relevant to the question of Scholastic's willfulness. 2019 WL 4891206, at *2. The court was not persuaded, noting that Scholastic disputed "the asserted near-identity of the Devices," that there were "reasonable grounds to distinguish between the Devices," and that rather than "demonstrate such near-identity to a convincing degree," Zen Design "ask[ed] the Court to accept its bare assertion that the Devices are such." *Id*. at *3.

For similar reasons, I am unpersuaded here. Defendants vigorously dispute plaintiff's claim that the six-panel SYW dresses are substantially identical to the four-panel Versa dresses. *See* Joint Ltr. at 4 ("[T]he dresses are plainly different."). Moreover, JY has offered nothing

---

[4] The plaintiff in *Zen Design* also alleged that the defendant "had plans to sell [Accused Device #2] at the time of the . . . settlement regarding Accused Device #1 and concealed these plans." 2019 WL 4891206, at *1.

beyond the allegations in its complaint (now the subject of motions to dismiss) to demonstrate that the factual predicate for its third theory has been established. Therefore, while JY is entitled to discovery into the design, development, and sales of the SYW dresses, it has not shown that discovery into the design and sales of the now-withdrawn Versa dresses in the years 2012-16 is relevant – or proportional – to the question of whether defendants acted willfully in 2017-18 when designing and selling the SYW dresses at issue in this action.

## Conclusion

For the foregoing reasons, JY's application seeking an order compelling defendants to produce "all relevant documents relating to the Versa and Style-Your-Way dresses without time limitation" (Dkt. No. 99) is DENIED.

Dated: New York, New York
December 16, 2019

**SO ORDERED**.

_____
**BARBARA MOSES**
**United States Magistrate Judge**

9